## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Corey E. Fisherman,

        Petitioner,

v.

State of Minnesota,

        Respondent.

Case No. 21-cv-735 (NEB/JFD)

**REPORT AND RECOMMENDATION**

---

This case comes before the Court on Petitioner Corey E. Fisherman's application for habeas corpus relief under 28 U.S.C. § 2254. (*See* Pet. at 1, Dkt. No. 1.) A jury convicted Petitioner of third-degree assault. (*See id.*) The Minnesota state trial court sentenced Petitioner to a total of 18 months in prison. (*See id.* at 2.) Petitioner's conviction and sentence were affirmed upon appeal. *See State v. Fisherman*, No. A19-1506, 2020 WL 3044109, at *2 (Minn. Ct. App. June 8, 2020), *review denied* (Aug. 25, 2020). Petitioner argues the state courts erred by permitting the prosecutor to commit misconduct at trial by urging the jury to find Petitioner guilty based on the need to uphold law and order—rather than on the evidence presented at trial. (*See* Pet. at 4.) The State of Minnesota argues that the Court should deny Petitioner's Petition because he failed to raise a claim under federal law before Minnesota's courts or in his Petition. (*See* Resp't's Answer at 1, Dkt. No. 5.) For the reasons set forth below, the Court recommends that Petitioner's Habeas Petition be denied and dismissed with prejudice.

I.   **Background**

   A.   **The State Court Proceedings**

On June 18, 2018, while Petitioner was an inmate of the Minnesota Correctional Facility at Rush City, Minnesota, a disagreement with another inmate named S.H. escalated. *Fisherman*, 2020 WL 3044109, at *1. Petitioner punched S.H. in the face, causing S.H. to sustain nasal and orbital fractures. *See id.* Petitioner was charged with third-degree assault. *See id.*

Petitioner and S.H. later testified that the disagreement was about "a food trade gone bad[,]" in which Petitioner had offered to trade tortilla shells for S.H.'s "hot meat," but when S.H. offered his hot meat, Petitioner demanded two hot meats instead, which S.H. refused. (*See* Resp't's Ex. 1 at 10, Dkt. No. 5-1[1] (citations to trial transcript omitted).) S.H. testified that in the ensuing tension after this interaction, Petitioner accused S.H. of embarrassing him in front of other inmates, and S.H. invited Petitioner back into S.H.'s cell for a fight. (*See id.* at 10–11 (citations omitted).) While both men were in S.H.'s cell, Petitioner struck S.H., and a guard saw the fight. (*See id.* at 11 (citations omitted).)

During the trial, Petitioner's attorney framed Petitioner's actions on June 18 as "a prison fight at gladiator school where [such fights] happen all the time." (*See* Resp't's Ex. 3 at 36, Dkt. No. 5-1.) She argued the prison "'may as well be planet Mars' because it has its 'own code of conduct,' 'its own social mores,' 'its own ecosystem,' and its own policies

---

[1] To avoid confusion because of the multiple exhibits within the same document, the Court will refer to the Court's electronic filing system's ECF pagination stamp at the top of each page for Respondent's Exhibits 1–5 within the document filed at docket number 5-1.

for holding inmates accountable for breaking rules." (*See id.*) She also presented evidence from corrections officers to support these claims, including testimony that the Rush City prison has a reputation as a "gladiator school" and "fight club." (*See id.*)

At issue in this Habeas Petition is the rebuttal that the prosecutor gave in his closing argument at trial, stating:

> [The Rush City prison is] a place . . . where the law of the State of Minnesota applies. Right? Where it's against the law for a man to intentionally hit another man in the face and break the bones in his face.
>
> We need that law to apply, Ladies and Gentlemen. The guards need it in order to maintain order in that place for their own safety. We all need it. You might not care much for [S.H.] We all certainly don't care much for his criminal history. You know what? This case isn't really about him. It's about what [Fisherman] did on June 18 of 2018.
>
> So this case is really about law and order. The laws of the State of Minnesota apply in that facility. We need them to. All of us.

(*See id.*) Petitioner's attorney did not object to any of the prosecutor's closing argument at trial. (*See id.* at 37.) After listening to the arguments and weighing the evidence, the jury found Petitioner guilty of third-degree assault. (*See id.*) The Honorable Robert Rancourt, Chisago County District Court, sentenced Petitioner to 18 months in prison, to be served consecutively with his previous sentence. (*See id.*; *see also* Resp't's Ex. 1 at 9.)

Petitioner appealed his conviction. (*See* Resp't's Ex. 3 at 48.) In his brief to the Minnesota Court of Appeals, he argued that "[t]he prosecutor committed serious misconduct which deprived [Petitioner] of a fair trial" and requested his conviction be reversed and his case be remanded for a new trial. (Resp't's Ex. 1 at 16.) Petitioner made

3

two arguments: (1) that the prosecutor's misconduct was plain error, and (2) that this plain error significantly affected the verdict. (*See id.* at 13–15.)

To support his argument that plain error had occurred, Petitioner cited only Minnesota state statutes and caselaw on the right to a fair trial. (*Id.* at 12–13.) Specifically, Petitioner argued that "[a] prosecutor is a 'minister of justice' with 'an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt.'" (*Id.* at 12 (citing *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006)).) Because of this obligation, prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction . . . ." (*Id.* at 13 (citing *State v. Jones*, 152 N.W.2d 67, 78 (Minn. 1967) (citation omitted)).) This duty means that prosecutors may not "interject issues broader than the guilt or innocence of the accused at trial"—which includes refraining from making inappropriate "law and order" themed closing arguments that ask the jury to find a defendant guilty as a response to broader facts than the alleged actions of the defendant. (*Id.* (citing *State v. Salitros*, 499 N.W.2d 815, 817 (Minn. 1993)).)

Petitioner argued this alleged prosecutorial misconduct affected his substantial rights because of its "significant effect on the jury verdict." (*Id.* at 14–15 (citing *Ramey*, 721 N.W.2d at 302).) As evidence of the prosecutor's prejudicial effect on the jury, Petitioner presented evidence that from July through November of 2018, several correctional officers were assaulted or murdered by prisoners in Minnesota, and that there was coverage of these crimes in newspaper articles. (*See id.* at 14 (citations omitted).) Because these events—and their media coverage—were part of the larger context in which the prosecutor made his closing argument at Petitioner's trial, Petitioner contended that the

4

jury's verdict was significantly affected by the prosecutor's closing argument that referenced the broader need to keep prison guards safe. (*Id.* at 14–15.)

The State responded that Petitioner "received a fair trial and the jury's verdict should be affirmed" because the prosecutor's closing argument merely asked the jury to apply Minnesota law to Petitioner's actions in a Minnesota prison. (Resp't's Ex. 2 at 26, 31, Dkt. No. 5-1.) The State argued that courts should examine the entirety of closing arguments, rather than just cherry-picking portions that might—standing alone—be improper. (*See id.* at 27 (citing *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993)).) Taken in their entirety, the State contended that the prosecutor had not "referenced any acts of violence against prison guards or interject[ed] any issues broader than the evidence the jury heard at trial[,]" but instead had responded to the defense's opening and closing arguments claiming that the jury should account for the fact that Petitioner's prison was a uniquely fight-prone cultural space in their verdict. (*Id.* at 27–28.)

The State also argued that even if there was plain error in the prosecutor's closing argument, a prosecutorial appeal to law and order in closing argument is "normally regarded as harmless error" without evidence that it actually affected the jury's verdict. (*Id.* at 28 (citing *Walsh*, 495 N.W.2d at 607) (in closing, prosecutor urged jury to "hold people accountable for the crimes they commit").) The State observed that, even in the cases Petitioner cited for the proposition that prosecutorial misconduct can rise to plain error, the state courts uniformly found those errors had no impact on the juries' verdicts—and alleged the same would have been true in Petitioner's case. (*See id.* at 28–30 (citations omitted).)

5

Without plain error, let alone error that has a substantial impact on the jury's verdict, the State argued that the Petitioner had no viable case on appeal. (*See id.* at 11.)

The Minnesota Court of Appeals agreed with the State and affirmed the jury's verdict in an unpublished opinion, reviewing it for plain error. *See Fisherman,* 2020 WL 3044109, at *1. The appellate court held there was no plain error because the prosecutor's closing argument did not inject issues beyond Petitioner's guilt or innocence, but rather, responded to Petitioner's argument that the Rush City prison is a uniquely fight-prone cultural space. *See id.* at *2. Additionally, the appellate court pointed out that the prosecutor closed his argument by "stat[ing] that the case was about what Fisherman did[,]" which further demonstrated there was no plain error. *Id.* Because there was no plain error, there was no need to consider prejudice. *See id.* However, the court of appeals went on to note that there was no prejudice because Petitioner's contention that the prosecutor's statements came in the context of media coverage of prison guard assaults and murders was irrelevant, as those newspaper articles were not part of the trial record, and Petitioner's case was not about the assault or murder of a guard. *See id.* Thus, the appellate court affirmed the trial court. *See id.*

After the Court of Appeals affirmed Petitioner's conviction, Petitioner filed a Petition for Further Review ("PFR") to the Minnesota Supreme Court. (*See* Resp't's Ex. 4 at 42, Dkt. No. 5-1.) In his PFR, Petitioner raised one issue: "Did the prosecutor commit prejudicial misconduct when he urged the jury to find Petitioner guilty in order to uphold law and order in prisons?" (*Id.* at 42.) He cited only state law in his PFR. The Minnesota

Supreme Court summarily denied Petitioner's PFR on August 25, 2020. (*See* Resp't's Ex. 5 at 48, Dkt. No. 5-1.)

### B. Federal Habeas Corpus Proceedings

On March 11, 2021, Petitioner timely filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (*See* Pet.) This Habeas Petition raises one ground for relief. (*See* Pet. at 4.) Namely, Petitioner believes he was wrongfully found guilty because the prosecutor committed prejudicial misconduct by urging the jury to find the petitioner guilty, not based on the evidence before it, but rather to uphold law and order in the State of Minnesota and its prisons. (*See id.*)

In response to the Petition, the State argues that Petitioner's claim does not merit habeas relief. (*See* Resp't's Answer at 1.) The State makes two arguments supporting this Court's denial of the Petition. First, the State alleges that Petitioner cites to no federal law to support his Petition, let alone a federal law showing "how the Minnesota courts' decisions are either contrary to or involve an unreasonable application of clearly established federal law." (*Id.* at 3–4.) Second, the State argues that Petitioner has procedurally defaulted on his claim because he raised no federal claim in the state courts. (*See id.* at 5–8.)

This matter is fully briefed and ripe for decision, and the Court next turns to the applicable law under which Petitioner's Petition must be considered.

### II. Legal Framework

Federal courts shall entertain a habeas corpus petition on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts cannot grant a writ of habeas corpus to a state prisoner unless the prisoner first exhausts all available state court remedies for their claims. *See* 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

To properly exhaust their claim, a federal habeas petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking relief in federal court. *Id.* at 845. In Minnesota, a petitioner's claims must be presented to both the Minnesota Court of Appeals and the Minnesota Supreme Court before a federal court may entertain them. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[A] prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review) . . . .").

During this exhaustion process, a petitioner must fairly present the federal dimension of their claims to the state courts. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). A petitioner need not spell out every nuance of their federal constitutional claim, but they must state enough about their federal claims that the state courts are on notice of those claims. *See McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (stating that a petitioner fairly presents their

federal claim in state court if they have "referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts") (citing *Myre v. State of Iowa*, 53 F.3d 199, 200–01 (8th Cir. 1995)) (quotation marks omitted). If a petitioner fails to fairly present their federal claims in state court, those claims generally cannot be considered by a federal court reviewing a habeas petition. *See* 28 U.S.C. § 2254(b)(1).

Where a petitioner's federal claim was not fairly presented on direct appeal to the state courts, a federal court sitting in habeas must determine whether a petitioner could still obtain a decision on the merits of his claim in state court. *See McCall*, 114 F.3d at 757. If the state's procedural rules bar a petitioner from requesting a ruling on the merits of their federal claim, that claim is considered procedurally defaulted. *See id.* A federal court may not entertain a habeas petition for a procedurally defaulted claim unless the petitioner shows cause for the default and establishes that he suffered actual prejudice caused by the alleged violation of federal law, or shows that a fundamental miscarriage of justice would result if his claim is not considered. *See McCall*, 114 F.3d at 757.

Conversely, if a petitioner has exhausted the available remedies in state court—including fairly presenting their federal claims during state appellate review—and the state court adjudicated their claims on the merits, then a federal court may entertain a federal habeas corpus petition. A federal court will grant habeas relief where the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States," or where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### III. Discussion

#### A. Exhaustion of Claims Before the State Courts

As a threshold matter, this Court must determine if Petitioner has exhausted his claims before the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). Petitioner has proceeded through a complete round of appeals in state court—including a denial of review by the Minnesota Supreme Court—before seeking his relief before this Court. This satisfies state court exhaustion. *See O'Sullivan*, 526 U.S. at 842.

#### B. Presentation of Federal Claims Before the State Courts

Next, the Court will consider whether Petitioner fairly presented a federal claim to the state courts. The Court finds this requirement has not been satisfied. To fairly present a federal claim in state court, a petitioner must have pointed the state courts "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999), *cert. denied*, 528 U.S. 846 (1999)).

Here, Petitioner challenged his conviction due to alleged prosecutorial misconduct solely on state law grounds. (*See* Def.'s Ex. 1 at 5 (showing Petitioner's supporting table of authorities comprised solely of Minnesota statutes and state court decisions applying state law).) To be sure, prosecutorial misconduct may also be a violation of federal law.

*See United States v. Crawford*, 523 F.3d 858, 861 (8th Cir. 2008) (citation omitted) ("A prosecutor's comments are improper if they 'are likely to inflame bias in the jury and to result in a verdict based on something other than the evidence.'"); *see also Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (citation omitted) ("As a general rule, 'prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process.'"). However, even if Petitioner had cited federal law in his Petition, this would not cure the fact that his appeals in the state courts failed to refer to a violation of any federal constitutional right, provision, or case.

To the extent Petitioner would argue that the right to a fair trial is so obviously similar in state and federal law that he as good as argued his federal right violation before the state courts, that is not so. "Mere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the [federal] Constitution.'" *McCall*, 114 F.3d at 757 (citing *Henry*, 513 U.S. at 365–66).

Petitioner also does not have the option to return to the state courts to raise his claim under federal law. Any attempt by Petitioner to file a state court postconviction petition raising his federal claim would be unavailing, because "Minnesota postconviction courts will not consider claims that were known at the time of appeal and not raised." *Jackson v. Beltz*, No. CV 20-1978 (PAM/KMM), 2021 WL 1795635, at *6 (D. Minn. Apr. 5, 2021), *R. & R. adopted*, No. CV 20-1978 (PAM/KMM), 2021 WL 1785228 (D. Minn. May 5,

2021) (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.")). Therefore, the Court finds that Petitioner has procedurally defaulted on any federal claim that his trial's verdict was substantially affected by prosecutorial misconduct because he failed to pursue any such federal claim during his state court appeals—and no further state appeals or postconviction petitions are available to remedy this. *See O'Sullivan*, 526 U.S. at 848.

The only way that Petitioner can overcome this procedural default is to show cause for the default and establish that he suffered actual prejudice caused by the alleged violation of federal law, or show that a fundamental miscarriage of justice will occur. *See McCall*, 114 F.3d at 757. Petitioner makes no argument showing why he was unable to raise his prosecutorial misconduct claim under both state and federal laws while proceeding through his state court appeals. He also cannot make an argument that his federal claim was unknown when he appealed the jury's verdict, having already raised his allegation of prosecutorial misconduct based on state law to the Minnesota Court of Appeals and Minnesota Supreme Court. Thus, the Court finds Petitioner has failed to show cause for this procedural default, and therefore need not proceed to consider prejudice. *See Abdullah v. Groose*, 75 F.3d 408, 413 (8th Cir. 1996).

Petitioner also cannot show that, if the court fails to consider the merits of this case due to procedural default, a fundamental miscarriage of justice will occur. This exception is "only available to a petitioner who demonstrates '[]a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *McCall*, 114 F.3d at

758 (citing *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995), *cert. denied*, 516 U.S. 1161 (1996) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).). Petitioner makes no argument that he was actually innocent of third-degree assault. Since Petitioner has procedurally defaulted on any federal claim without showing that any exception applies justifying this Court's review of his Petition on the merits despite this default, the Court may not entertain this Habeas Petition. *See McCall*, 114 F.3d at 757. Therefore, the Court recommends that Petitioner's Habeas Petition be denied and dismissed with prejudice.

C.  **Certificate of Appealability**

If a § 2254 habeas corpus petitioner receives an adverse ruling from the federal district court, they may only appeal that ruling if they are granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ."); *see also* Fed. R. App. P. 22(b)(1) ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). Courts cannot grant a petitioner a COA unless that petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

There is no substantial showing in the Petition that a federal right has been denied. The Court finds this based on Petitioner's procedural default in failing to fairly present a federal claim to the Minnesota courts. Where a court denies a habeas petition on procedural grounds rather than on the merits of a prisoner's underlying constitutional claim, a COA should only issue when the prisoner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[,] and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. The rule of decision applied in this Report and Recommendation is that a federal court may not consider a procedurally defaulted federal claim in habeas unless cause and prejudice is shown. This is well-settled law, and the Court finds it unlikely that higher federal courts would deviate from this principle to grant Petitioner relief. Therefore, the Court recommends that Petitioner should not be granted a COA in this matter.

Based upon the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus (Dkt. No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**, and that no COA be issued.

Dated: November 15, 2021      *s/ John F. Docherty*
   JOHN F. DOCHERTY
   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).